UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HALEY YATES, et al.,

    Plaintiffs,

v.

EAST SIDE UNION HIGH SCHOOL DISTRICT, et al.,

    Defendants.

Case No. 18-cv-02966-JD

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 81, 83

Plaintiffs Haley Yates (Yates) and her parents (together with Haley, the Yates family) have sued the East Side Union High School District (the District), two District employees, and a fellow student for an array of claims under Title IX, 20 U.S.C. § 1681, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and California state statutes, as well as for several common law torts. The case arises out of Yates's junior year at Piedmont Hills High School (Piedmont Hills), when she was 15 years old and was physically and sexually abused by another student, Toure Oliver. Plaintiffs allege that the District conducted a biased and inadequate investigation of the situation, and that its overall response amounted to deliberate indifference to student-on-student sexual harassment.

This order resolves a motion for summary judgment filed by the District and Piedmont Hills teacher Archie Kregear, who are jointly represented, Dkt. No. 81, and a separate motion filed by Piedmont Hills Principal Traci Williams, Dkt. No. 83. The motions ask for judgment in defendants' favor on the Title IX, ADA, Rehabilitation Act, and California Education Code § 220 claims against the District; and the Bane Act, Unruh Civil Rights Act, "violation of mandatory duty," intentional infliction of emotional distress (IIED), negligence, and negligent supervision

1   claims against all defendants. Defendant Toure Oliver is proceeding pro se, and did not seek
2   summary judgment.
3         The parties buried each other, and the Court, under a mountain of filings for the motions.
4   All told, they filed approximately 150 pages of briefs and almost 900 pages of declarations and
5   exhibits. These materials did little more than highlight the myriad of genuine disputes of key facts
6   in this fact-driven litigation.
7         Overall, the parties' approach to summary judgment is not consonant with the goals and
8   purposes of Rule 56. *See FTC v. D-Link Sys., Inc.*, No. 17-cv-00039-JD, 2018 WL 6040192 (N.D.
9   Cal. Nov. 5, 2018). A good argument can be made that the motions should be summarily denied
10  on this basis alone. Even so, in the interest of moving this case along, the Court reviewed the
11  voluminous filings and concludes that the claims for a violation of a mandatory duty, IIED, and
12  under the Bane Act, must be dismissed as a matter of law. Summary judgment is denied in all
13  other respects.

## BACKGROUND

15        The parties' familiarity with the record is assumed. There is a modest degree of agreement
16  about the basic circumstances of the case. The parties do not dispute that Yates was diagnosed
17  with dyslexia and received specialized education at Piedmont Hills under an Individualized
18  Education Plan ("IEP") beginning her freshman year. Dkt. No. 84-1 (H. Yates Dep.) at 23-24. At
19  the end of her freshman year, Yates attempted suicide. Dkt. No. 102, Ex. V (G. Yates Dep.) at 51.
20        Yates began a relationship with Oliver during her junior year -- the 2016-17 school year --
21  when she was 15 years old. Dkt. No. 102, Ex. A at 14, 54. Oliver sexually abused her from
22  October 2016 to early January 2017. Dkt. No. 84-1 at 67-73, 79. He physically abused her on
23  campus from October 2016 to May 2017. Dkt. No. 102, Ex. A at 119-120. Yates did not tell her
24  parents or anyone at Piedmont Hills about the abuse until late April 2017. Dkt. No. 102, Ex. A at
25  120, and Ex. V at 112.
26        In December 2016, students reported to two teachers that an "explicit sexual video of
27  Haley Yates and Toure Oliver [was] being transmitted to their friends." Dkt. No. 102, Ex. C
28  (Harris Dep.) at 20. The students said the videos had been circulating for a month "and that Haley

United States District Court
Northern District of California

was unaware of them." Dkt. No. 102, Ex. D at ECF 103. There is some evidence that one of the teachers told Oliver to delete any videos he might have. *See* Dkt. 102, Ex. E at ECF 107. One of the teachers gave defendant Williams the names of at least four students to interview: Richard Fedeline, Michael Welch, Lorenza Alves, and Haley Yates. Dkt. No. 102, Ex. D at ECF 103. Only Alves was ultimately interviewed. *See* Dkt. No. 102, Ex. L (Williams Dep.) at 31, 73.

Pursuant to a protocol at Piedmont Hills, a report of "inappropriate" photos or videos triggers an internal investigation by the school, and the police are not contacted immediately. *See* Dkt. No. 83-1 (Vander Zee Dep.) at 56. Williams assigned Associate Principal Nancy Pereira to investigate the situation; Steve Sellers, a student advisor, assisted Pereira. Dkt. No. 84-4 (Williams Dep.) at 29; Dkt. No. 84-6 (Pereira Dep.) at 86. Yates was not interviewed as part of the investigation, for reasons that are disputed. The District took no disciplinary action against Oliver as a result of the investigation. Dkt. No. 84-4 at 40. The parties agree that Williams is Oliver's cousin.

In May 2017, San Jose Police arrested Oliver at school for sexually and physically assaulting Yates. *Id*. Williams went to Oliver's juvenile detention hearing to support him, and the Yates family saw her in the area of the hearing room. Dkt. No. 102, Ex. V at 116-17. Williams asked two District staff members to attend the hearing in support of Oliver, but neither Williams nor the employees were allowed into the hearing room during the proceedings. Dkt. No. 102, Ex. L at 42 and Ex. A at 128.

In response to a complaint about the investigation filed by Yates's mother, Williams was reprimanded by the District for conducting an inadequate and biased investigation. *See* Dkt. No. 102, Ex. K. The District expressly reprimanded Williams for attending Oliver's hearing, which "created the appearance of bias on behalf of the District and intimidated Haley and her family. Moreover, you have admitted that your appearance at the courthouse was primarily motivated by retaliation against Ms. Yates for filing a complaint against you." *Id.* at 2.

In May 2017, Yates largely stopped attending Piedmont Hills in person. Dkt. No. 102, Ex. A at 130. She went on independent study for her senior year but continued to play softball at school, and attended a prom and graduation. *Id.* at 137-38.

3

**DISCUSSION**

**I.   LEGAL STANDARDS**

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant[s] sho[w] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court may dispose of less than the entire case and even just portions of a claim or defense." *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-CV-04217-JD, 2020 WL 4368212, at *2 (N.D. Cal. July 30, 2020) (citing *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A fact is material if it could affect the outcome of the suit under the governing law. *Id.* To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255. The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-24. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

"It is not the Court's responsibility to root through the record to establish the absence of factual disputes, or to look for evidence on the nonmoving parties' behalf." *CZ Servs., Inc.*, 2020 WL 4368212, at *3 (internal quotations and citations omitted); *see also Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 989 (N.D. Cal. 2017), *aff'd*, 932 F.3d 861 (9th Cir. 2019).

**II.   THE IMMUNITY DEFENSES**

Defendants' initial grounds for summary judgment are based on several theories of immunity from suit. All three defendants contend that the Eleventh Amendment bars the Yates

4

family's state law claims because school districts and their employees who are sued in an official capacity are state entities immune from suit in federal court. *See, e.g.*, Dkt. No. 81 at 9-10; Dkt. No. 83 at 11. All three defendants contend that a California discretionary immunity statute, Cal. Gov. Code § 820.2, immunizes the school district employees from suit for acts and omissions that occurred during the December 2016 investigation. *See* Dkt. No. 81 at 10; Dkt. No. 83 at 22. The District and Kregear also say that they are entitled to qualified immunity for the claims arising from the December 2016 investigation. *See* Dkt. No. 81 at 11.

### A. Defendants Have Waived the Eleventh Amendment

The Eleventh Amendment bars damages suits against a state unless the state has abrogated its immunity through legislation or otherwise consented to suit in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). California school districts are "arms of the state" entitled to Eleventh Amendment immunity, *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992), and this immunity extends to school officials sued in an official capacity, *Eaglesmith v. Ward*, 73 F.3d 857, 859-60 (9th Cir. 1995). California has not abrogated its immunity or consented to suit in federal court for claims arising under the Unruh Act, the Bane Act, the California Education Code, or the California Tort Claims Act. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (Unruh Act); *Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009) (Bane Act); *S.B. ex rel. Kristina B. v. Cal. Dep't Educ.*, 327 F. Supp. 3d 1218, 1235 (E.D. Cal. 2018) (Education Code); *Riggle v. California*, 577 F.2d 579, 585-86 (9th Cir. 1978) (Tort Claims Act).

Even so, the Eleventh Amendment does not bar the Yates family's state law claims. That is because Eleventh Amendment immunity is a waivable defense, and defendants acted in a manner that amounts to a waiver.

The "Eleventh Amendment is not a true limitation upon the court's subject matter jurisdiction, but rather a personal privilege that a state may waive." *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 760 (9th Cir. 1999); *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction . . . [t]he State can waive the defense."); *Aholelei v. Dep't of Public Safety*, 488 F.3d

5

1144, 1147 (9th Cir. 2007) (Eleventh Amendment immunity is "an affirmative defense" that "can be waived.").

Defendants waived the Eleventh Amendment by waiting until summary judgment before making any mention of it. They filed a motion to dismiss under Rule 12 without raising the Eleventh Amendment. *See* Dkt. No. 8 (Joint Mot. to Dismiss). They filed answers that did not allege the Eleventh Amendment as an affirmative defense, even though they pleaded other immunity defenses. *See* Dkt. No. 24 (District and Kregear's Answer); Dkt. No. 25 (Williams's Answer). They did not identify it in the joint case management statement as a legal issue before the Court, which our District requires each litigant to do. *See* Dkt. No. 16 at 3-4; Civil L.R. 16-9. Rather, defendants stayed entirely silent on the Eleventh Amendment while this case was litigated for almost three years, and while the parties invested substantial resources in fact and expert witness depositions, document productions, and other discovery. They raised it for the first time only in the summary judgment motions.

This record of inaction warrants a finding of waiver. A state waives "its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity." *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002) (internal quotations and citations omitted). To be sure, there is no hard and fast line of demarcation for finding a waiver. *Hill* discussed the start of trial as sounding the death knell for claiming immunity based on the circumstances in that case, but that by no means forecloses the possibility of finding waiver short of trial. *See Hill*, 179 F.3d at 756. *Hill* expressly contemplated that waiting until summary judgment may also be too late because "[a] party may gain an improper advantage through this tactic [of delay] even without waiting until the first day of trial." *Id.* at 757. That is all the more true when, as here, a "party knows whether it purports to be an 'arm of the state,' and is capable of disclosing early in the proceedings whether it objects to having the matter heard in federal court. Timely disclosure provides fair warning to the plaintiff, who can amend the complaint, dismiss the action and refile it in state court, or request a prompt ruling on the Eleventh Amendment defense before the parties and the court have invested substantial resources in the case." *Id.* at 758. Defendants prevented any of that from happening by suppressing any mention of the Eleventh Amendment until this

6

1    case was several years old.  In these circumstances, the Court cannot conclude that the waivable

2    defense of Eleventh Amendment immunity bars the state law claims.

### B.    Discretionary Immunity Does Not Apply

Defendants' suggestion that they are entitled to discretionary immunity under California state law is also misdirected.  California Government Code Section 820.2 states that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him [or her], whether or not such discretion be abused."  Section 815.2(b) extends this immunity to public entities, providing that "a public entity is not liable for an injury resulting from an act or omission of an employee . . . where the employee is immune from liability."  The District and Kregear say that these statutes bar "Plaintiffs' claims that arise from the discretionary acts of school employees with respect to the manner in which the December 2, 2016 investigation took place."  Dkt. No. 81 at 10-11.[1]  Williams adds that she is also entitled to discretionary immunity for the December 2016 investigation.  Dkt. No. 83 at 22-23.

Kregear has no grounds for discretionary immunity as defendants have framed the request. It is undisputed that he was not involved with the December 2016 investigation, and so none of the claims against him are tied to it.  The claims against him arise out of other events, namely whether he acted contrary to a mandatory duty to report suspected child abuse to the police under California Penal Code § 11166.  That is also, in any event, a non-discretionary duty.  Because Kregear cannot claim discretionary immunity, neither can the District through him by operation of Section 815.2(b).

So too for Williams and the District, as the record currently stands.  "The California Supreme Court has explained that this immunity applies narrowly to 'basic policy decisions' or 'quasi-legislative policy making,' not to 'lower-level, or ministerial, decisions that merely

---

[1] The District and Kregear also make a glancing reference to prosecutorial immunity under Cal. Gov. Code § 821.6.  Even assuming this statute might apply, which is questionable, defendants never asserted this as an affirmative defense in the answer, Dkt. No. 24, and abandoned the theory altogether in a footnote in the reply brief.  Dkt. No. 91 at 5 n.5.  Consequently, it need not be taken up here.

implement a basic policy already formulated.'" *J.E.L. v. San Francisco Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D. Cal. 2016) (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). Section 820.2 does not provide a "basis for blanket immunization of all the specific and individual actions undertaken in response" to student-on-student misconduct. *Id.*

Williams says she is entitled to immunity for claims relating to the December 2016 investigation because California district courts "routinely hold that decisions whether to conduct disciplinary investigations, how such investigations are conducted, whether and what discipline to impose, and what information relating to the investigation to report to third parties all fall within the scope" of that immunity. Dkt. No. 83 at 23 (citing, among other cases, *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997)). That goes too far. A recent district court decision has catalogued a marked variability in the judicial application of Section 820.2 immunity. *See Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1131 (E.D. Cal. 2018) (collecting cases and observing that "[s]ome courts declare all disciplinary decisions discretionary" while "others decline to liberally immunize all disciplinary decisions."). Moreover, our circuit has determined that negligence in carrying out an investigation is not protected by Section 820.2 immunity. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998).

There is also a factual dispute that weighs against a grant of discretionary immunity to Williams. The immunity arises after the public employee "prove[s] that . . . in deciding to perform (or not to perform) the act which led to plaintiff's injury, [she] *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (emphasis in original). The claims against Williams implicate a mandatory duty to report child abuse, which is not a discretionary decision. To be sure, the parties hotly dispute whether this mandatory duty was triggered at some point during the December 2016 investigation. But that is a question of fact for a jury to decide.

It may be that a grant of discretionary immunity will be appropriate depending on developments at trial. But at this juncture, the Court cannot say Williams and the District are

entitled to discretionary immunity. Accordingly, it is denied without prejudice to further consideration as warranted.

### C. Qualified Immunity Does Not Apply

The District and Kregear assert qualified immunity as a defense to all claims arising from the December 2016 investigation. The specific claims that might be barred by qualified immunity are not clearly delineated, and defendants offer no authority for the proposition that qualified immunity applies to claims other than those brought under 42 U.S.C. § 1983. This is telling because plaintiffs did not allege a Section 1983 count, and all of the qualified immunity cases cited by defendants are in that context. *See* Dkt. No. 81 at 11.

In any event, the undisputed facts establish that qualified immunity has no application here. Qualified immunity is available only to individuals and not to entities. *See Kentucky*, 473 U.S. at 166-67. Consequently, the District itself has no claim to it. This means qualified immunity is not a bar to the Title IX, ADA, Rehabilitation Act claims, and California Education Code § 220 claims, which are brought only against the District and no other defendants. *See* Dkt. No. 1 ¶¶ 45, 51, 59, 108; *see also Oona R.-S. ex rel. Kate S. v. McCaffrey*, 143 F.3d 473, 477 (9th Cir. 1998) (qualified immunity is not a defense to a § 1983 claim predicated on a "peer harassment claim under Title IX.").

Nor is qualified immunity a bar to the claims against Kregear, which are all state law claims -- specifically, Bane Act, Unruh Act, IIED, negligence, negligent supervision, and "violation of mandatory duty" claims. Dkt. No. 1 ¶¶ 66, 78, 82-83, 85-87, 89-92, 96. "The doctrine of qualified immunity does not shield defendants from state law claims," including claims under the Bane Act, Cal. Civ. Code § 52.1, which is California's equivalent to 42 U.S.C. § 1983. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) (citing Richard H. Fallon Jr. et al., *Hart & Wechsler's The Federal Courts and the Federal System* 1006 (6th ed. 2009) ("The immunity of *state* officials in actions based on state law is itself governed by state law, for absent wholly arbitrary action by the state, there is no distinctive federal interest.")).

### III. THE FEDERAL AND STATE CIVIL RIGHTS CLAIMS

The claims against the District under Title IX, 20 U.S.C. § 1681, and California Education Code § 220 are premised on the allegation that the District acted with deliberate indifference to Oliver's "ongoing sexual, physical, verbal, and psychological" harassment, which was so severe that Yates was in effect barred from "access to an educational opportunity or benefit." Dkt. No. 1 ¶¶ 45, 105-108.

Conflicting evidence in the record demands a trial on the question of deliberate indifference. For purposes of Title IX, deliberate indifference means that the response was "clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *see also Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020) (same). That is a factual inquiry, and the parties are at loggerheads over the evidence relevant to it.

Yates has adduced evidence that District employees received reports from students of sexually explicit videos that she was "unaware of"; instructed Oliver to destroy evidence of any sexually explicit videos in his possession; viewed an explicit photo featuring Yates on Oliver's phone; and refused to interview Yates and student witnesses during the investigation. Yates has also tendered evidence showing that the District deemed the investigation to be "improper and biased" because of Williams's family relationship with Oliver. Defendants offer a raft of counter-evidence in response. A jury will need to determine the Title IX, Education Code, and Unruh Act claims.

The same goes for the claims for disability discrimination against the District under the ADA, 42 U.S.C. § 12312, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Unruh Act, Cal. Civ. Code §§ 51(f), 54.1(d). Dkt. No. 1 ¶¶ 50, 53, 56, 60, 64. It may be, as defendants suggest, that Yates has a somewhat meandering story to tell for these claims, but the record again presents genuine disputes of fact with respect to intentional discrimination *vel non*.

To put a finer point on it, intentional discrimination under Title II of the ADA requires a plaintiff to show that "(1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services,

1   programs, or activities, and (3) such exclusion or discrimination was by reason of her disability."
2   *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  The elements under Section 504 of the
3   Rehabilitation Act are similar, *see id.*, and a violation of the ADA is by definition a violation of
4   the Unruh Act, *see* Cal. Civ. Code § 51(f).

5   On the record before the Court, Yates has shown a genuine dispute about the salient facts
6   for these elements.  At the summary judgment stage, a plaintiff need only offer evidence which
7   "gives rise to an inference of unlawful discrimination."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885,
8   889 (9th Cir. 1994) (internal quotations and citations omitted).  Stress and depression, which Yates
9   suffered from and were known to defendants, are mental impairments under the ADA.  *See Snead*
10  *v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1088 (9th Cir. 2001); *Mustafa v. Clark Cnty. Sch.*
11  *Dist.*, 157 F.3d 1169, 1174-75 (9th Cir. 1998) (depression, PTSD, and panic attacks can constitute
12  disabilities under the ADA).  Yates has adduced evidence that Williams knew about her suicide
13  attempt from her role as IEP advisor for the District, and because Mrs. Yates told her during a
14  meeting.  Yates has also produced evidence showing that Williams refused to interview her during
15  the investigation.  These are all issues ripe for a jury determination.

16  There are also genuine issue of material fact for the Unruh Act claims.  The Yates family
17  says that Williams retaliated against them for filing a sexual harassment complaint against her the
18  day after Oliver was arrested.  Additionally, they have evidence indicating that Williams attended
19  Oliver's juvenile detention hearing to retaliate against them for making that complaint.

20  The District asks to revisit the Court's determination in the motion to dismiss order that an
21  Unruh Act claim can be made against a public school.  *See* Dkt. No. 22.  The grounds for this
22  request is a decision by the California Court of Appeal, *Brennan B. v. Super. Ct.*, 57 Cal. App. 5th
23  367 (2020), which was filed after the motion to dismiss order.  The California Supreme Court
24  granted review of *Brennan B.* in February 2021.  *See* 480 P.3d 1199.  During review, the Court of
25  Appeal decision has no binding or precedential effect, *see* Cal. Rules of Court Rule 8.1115(e)(1),
26  and the Court declines to take up the issue again at this time.

27  The Bane Act claim against the District, Kregear, and Williams is dismissed.  The Bane
28  Act requires evidence that a defendant interfered with the exercise of a plaintiff's rights under

11

federal or California law by "threat, intimidation, or coercion." Cal. Civ. Code § 52.1. The "focus is on whether the challenged conduct amounts to an intentional or 'knowing and blameworthy interference with the plaintiffs' constitutional rights.'" *Eberhard v. Cal. Highway Patrol*, No. 3:14-CV-01910-JD, 2015 WL 6871750, at *8 (N.D. Cal. Nov. 9, 2015) (quoting *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 623-24 (9th Cir. 2014)).

Yates initially alleged that Williams, Kregear, and the District "conspired, supported, encouraged, facilitated, acquiesced [to Oliver's] violence, threats, intimidation, and coercion" and that Yates stopped trusting her parents, which "interfered with the child-parent relationship." Dkt. No. 1 ¶ 66. Her position on summary judgment is that Williams interfered with her right to be free from sex and disability discrimination. *See* Dkt. No. 86 at 22.

Neither approach is sufficient for a trial on the Bane Act claim, which is alleged only on Haley Yates's behalf, and not her parents. Even assuming that Williams made a potentially threatening remark to her mother during a meeting to the effect that Haley Yates and Oliver "could be cited with distributing child pornography," Dkt. No. 102, Ex. L at 35, it had no connection to an exercise of rights by Haley. There is also no apparent tie between the allegation that Williams drummed up support for Oliver and Yates's right to be free from discrimination. *See* Dkt. No. 86 at 22.

## IV. THE REMAINING STATE LAW CLAIMS

### A. Negligence and Negligent Supervision

Defendants say that the negligence and negligent supervision claims are barred as a matter of law because they "lack the requisite statutory basis" under California Government Code § 815(a). Dkt. No. 81 at 19; Dkt. No. 83 at 12. That is not well taken. *See* Cal. Gov. Code §§ 815.2(a) (liability for injuries caused by an employee acting within the scope of employment); 815.6 (liability for failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury). The claims will go to trial.

### B. Penal Code Section 11166

There is no private right of action under Penal Code Section 11166. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("criminal statutes rarely imply a private right of action."). It is dismissed.

### C. The IIED Claims

The IIED claims cannot go forward because the Yates family has failed to show "conduct . . . so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) (internal quotations and citations omitted). The IIED claims are based on allegations that the District "covered up" Oliver's abuse, and that Williams and other District employees attended Oliver's juvenile detention hearing to support him. Dkt. No. 1 ¶ 78. The centerpiece of the IIED claims is the allegation that Williams misrepresented to Yates's mother during a meeting on December 2, 2016, that there were no sexually explicit photos and videos of her daughter. Dkt. No. 86 at 5-6. Even taking this as true for present purposes, the alleged conduct is not so extreme or outrageous as to support an IIED claim. Other courts have reached a similar conclusion. *See, e.g., Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. 19-cv-6962 DDP, 2020 WL 2556356, at *9 (C.D. Cal. May 19, 2020) (allegation that principal lied to parents about having knowledge of rape complaints insufficient to state an IIED claim).

So too for an IIED claim based on Williams's attendance at Oliver's juvenile detention hearing. Conduct must be "*especially calculated to cause*" emotional distress to be actionable. *Ochoa v. Super. Ct.*, 39 Cal. 3d 159. 165 n.5 (1985) (emphasis in original). The record establishes that Williams is related to Oliver, and that Oliver's mother asked Williams to attend the hearing to support him. While her presence may have been unwelcome to the Yates family, this conduct is again not so extreme or outrageous to support an IIED claim.

13

**CONCLUSION**

Summary judgment is granted for defendants on the Fourth, Seventh, and Tenth claims. It is denied in all other respects.

**IT IS SO ORDERED.**

Dated: August 18, 2021

JAMES DONATO
United States District Judge